IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSUE ZAVALA, | § | |
| | § | |
| *Plaintiff*, | § | CIV. A. NO. |
| | § | 4:25-CV-01213-O-BP |
| | § | |
| v. | § | |
| | § | |
| AT&T SERVICES, INC. and | § | |
| CWA LOCAL 6201, | § | |
| | § | |
| *Defendants*. | § | |

**CWA LOCAL 6201'S RULE 12(b)(6)**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Respectfully submitted,

James D. Sanford
**Gillespie Sanford LLP**
4803 Gaston Avenue
Dallas, Texas 75246
Phone: (214) 800-5111
Fax: (214) 838-0001

**ATTORNEY FOR DEFENDANT CWA LOCAL 6201**

## TABLE OF CONTENTS


**LOCAL RULE 7.2(f) DISCLOSURE** .......... **1**

**I. INTRODUCTION** .......... **2**

**II. FACTUAL BACKGROUND**

A. AT&T Suspends Zavala in 2023 for Refusing a Management Directive .......... 3

B. The CBA's Two-Step Grievance Process, CWA's Internal Appeals Process, and Local 6201's Limited Role in Both Procedures .......... 4

C. Local 6201 Grieves the Suspension on Zavala's Behalf Through the First Step Before Passing it on to CWA District 6 .......... 7

D. AT&T Terminates Zavala for Refusing to Follow Company Policy Relating to His Work Schedule .......... 8

E. Local 6201 Grieves the Termination on Zavala's Behalf Through the First Step Before Passing it on to CWA District 6 .......... 9

F. Zavala Blames Local 6201 for His Termination Over a Year After Local 6201's Last Involvement .......... 11

**III. STANDARDS GOVERNING THIS RULE 12(b)(6) MOTION** .......... **12**

**IV. ARGUMENTS AND AUTHORITIES** .......... **13**

A. Courts Owe Wide Deference to a Union's Grievance Handling and Arbitration Decisions .......... 13

B. Zavala Does Not Allege Discrimination or Bad Faith by Local 6201 (or CWA) .......... 16

C. Zavala's Allegations and Exhibits Show that Local 6201's Representation was Neither Arbitrary Nor Perfunctory .......... 17

1. CWA's Decision Not to Arbitrate Is a Core Union Judgment and Not a DFR Breach Absent Bad Faith or Discrimination .......... 18

2. CWA's Multi-Layered Grievance Handling and Internal Appeals Procedures Were Thorough and Fair ...... 19

3. CWA's Grievance and Arbitration Decisions Were Judgment Calls to Which Courts Should Defer .......... 20

4. Zavala's Allegations Target Conduct by AT&T and CWA District 6, Not Local 6201 .......... 23

**V. CONCLUSION .......... 24**

**CERTIFICATE OF SERVICE .......... 25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991) .......... *passim*

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) .......... 12

*Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*,
403 U.S. 274 (1971) .......... 14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Bache v. AT&T Co.*,
840 F.2d 283 (5th Cir. 1988) .......... 20, 21, 24

*Barrett v. Ebasco Constructors, Inc.*,
868 F.2d 170 (5th Cir. 1989) .......... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 12

*Butschek v. Southwestern Bell Tel. Co.*,
952 F. Supp. 470 (1996) .......... 15, 24

*Bowen v. U.S. Postal Serv.*,
459 U.S. 212 (1983) .......... 15

*Carr v. Air Line Pilots Ass'n, Int'l*,
866 F.3d 597 (5th Cir. 2017) .......... 16, 20

*Connally v. Transcon Lines*,
583 F.2d 199 (5th Cir. 1978) .......... 20

*Del Casal v. Eastern Airlines, Inc.*,
634 F.2d 295 (5th Cir. 1981) .......... 14

*Demetris v. Transp. Workers Union of Am., AFL-CIO*,
862 F.3d 799 (9th Cir. 2017) .......... 14

*Finerty v. NLRB*,
113 F.3d 1288 (D.C. Cir. 1997) .................................................... 23

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) .................................................... 12

*Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*,
880 F.2d 846 (5th Cir. 1989) .................................................... *passim*

*Lone Star Fund V, LP v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) .................................................... 13

*United States ex. Rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) .................................................... 13, 22

*Seymour v. Olin Corp.*,
666 F.2d 202 (5th Cir. Unit B 1982) .................................................... 15, 18

*Simmons v. Peavy-Welsh Lumber Co.*,
113 F.2d 812 (5th Cir. 1940) .................................................... 22

*Turner v. Air Transport Dispatchers' Ass'n*,
468 F.2d 297 (5th Cir. 1972) .................................................... 14, 15, 16, 18

*Vaca v. Sipes*,
386 U.S. 171 (1967) .................................................... *passim*

**Statutes**

Labor Management Relations Act Section,
301, 29 U.S.C. § 185 .................................................... 2, 24, 25

National Labor Relations Act,
29 U.S.C. § 151 *et seq.* .................................................... 1

**Rules**

Federal Rules of Civil Procedure

FED. R. CIV. P. 10(c) .................................................... 13

FED. R. CIV. P. 12(B)(6).................................................... 1, 12, 25

TO THE HONORABLE COURT:

The Court should dismiss Plaintiff's First Amended Complaint for failure to state a plausible claim against Defendant CWA Local 6201 ("Local 6201") for duty-of-fair-representation breach.

**LOCAL RULE 7.2(f) DISCLOSURE**

**Use of Generative Artificial Intelligence.** The undersigned used a generative artificial intelligence tool in researching, outlining, and drafting this brief. Counsel reviewed the full brief, including factual statements and legal arguments, and verified citations, quotations, and legal authorities.

## I. INTRODUCTION

Defendant AT&T Services, Inc. is a telecommunications and technology services company with tens of thousands of employees across the United States. Local 6201 is the direct collective-bargaining representative for fewer than 1,000 Ft. Worth-area AT&T employees. [Gipson dec. ¶ 4/APP 1] The National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA"), creates a duty for unions to treat members in good faith and without discrimination. Local 6201 proudly bears that duty in representing its members.

One of those former members is Josue Zavala. AT&T terminated Zavala in November 2024 for violating company policy. [PLAINTIFF'S FIRST AMENDED COMPLAINT, ECF 30 ("FAC") ¶¶ 2, 162] Zavala sued AT&T for disability discrimination and retaliation. [ECF 1 (Oct. 28, 2025)] Local 6201 went unmentioned.

Twenty months after his termination, Zavala amended to add Local 6201. His sole claim against Local 6201 is under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] He alleges that the local union breached its duty of fair representation following his October 2023 suspension (the "DML Grievance") and his November 2024 termination (the "Termination Grievance"). [FAC ¶¶ 13, 273] Specifically, he faults Local 6201 for "refusing to advance his grievance[s] to arbitration" despite hearing Zavala's contract interpretation and version of events. [FAC ¶ 15] He makes no claim that Local 6201 (or the international union, Communication Workers of America ("CWA")) discriminated against him, deceived him, or acted in bad faith. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (explaining that a union breaches its duty only when its conduct is "arbitrary, discriminatory, or in bad faith.").

Zavala second-guesses Local 6201's efforts on his behalf and faults the "Union" for not arbitrating his case.[2] [ECF ¶ 15] He is mistaken. Local 6201 had no ability to take his case to arbitration—even if his grievance had merit, which it did not—and the local union played no part in that decision. That was CWA's decision, not Local 6201's, under the collective bargaining agreement

[1] Zavala also brings a hybrid Section 301 claim against AT&T for breach of the collective-bargaining agreement, in addition to the existing ADA claims. [FAC ¶ 13]

[2] Zavala's 52-page, 296-paragraph complaint names "Communications Workers of America, Local 6201" but describes interactions with and conduct by both Local 6201 and the international union, Communications Workers of America, AFL-CIO. This motion distinguishes the two by referring to the international union as "CWA" and the affiliated local union as "Local 6201."

("CBA") and CWA Constitution.

His DFR claim also fails because the decision to arbitrate a grievance is a union judgment to which courts should defer. Zavala, like other union members, has no "absolute right to have his grievance taken to arbitration …," *Vaca*, 386 U.S. at 191, or to any other level of the grievance process. *Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 852 (5th Cir. 1989). Local 6201 deserves "wide latitude" in representing him. *Air Line Pilots Ass'n, Int'l ("ALPA") v. O'Neill*, 499 U.S. 65, 78 (1991).

Zavala has his own version of the events leading AT&T to terminate him, and he understandably regrets the outcome. However much he disagrees with Local 6201's grievance handling, he has not alleged a viable DFR claim. Zavala's after-the-fact complaints about his union's efforts and his dissatisfaction with the end to his AT&T employment are no basis for Local 6201's liability. The First Amended Complaint fails to plead a plausible claim for DFR breach and should be dismissed as to Local 6201.

## II. FACTUAL BACKGROUND

### A. AT&T Suspends Zavala in 2023 for Refusing a Management Directive

AT&T employed Josue Zavala as a Premises Technician for over a decade beginning in April 2014. [FAC ¶ 2] After transferring to Ft. Worth, Texas, Zavala started disputing his work schedule and shift release times with management. [FAC ¶¶ 32, 35]

This dispute continued into fall 2023. On September 17, 2023, Manager

Kain Troxell instructed Zavala to contact a neighbor to gain job-site access. [FAC ¶ 174, 182-186] Zavala says that Troxell's instruction differed from prior training. AT&T placed Zavala on DML over the incident beginning on October 2, 2023 [ECF ¶ 175] Zavala's direct supervisor, Manager Network Services Byron Majors, cited Zavala's "fail[ure] to follow a manager directive, which is a [Code of Business Conduct ("COBC")] violation," advised that he must follow AT&T's Field Services Technician Expectations going forward, and warned that Zavala's job was in jeopardy. [FAC Ex. 8 at 85] The DML was set to run through September 2024. [ECF ¶¶ 174-175]

### B. The CBA's Two-Step Grievance Process, CWA's Internal Appeals Process, and Local 6201's Limited Role in Both Procedures

The 2017 CBA between AT&T and CWA covered Zavala and other Local 6201 members along with thousands of other AT&T employees in numerous other union locals.[3] [FAC ¶ 38; Gipson dec. ¶ 7/APP 4; Attachment 1/APP 5] The 2017 CBA channels grievances through a two-step "Formal Grievance" process. [Attachment 1/App. 114-115] That process is in Article XIX, which generally comprises Step 1—before the "General Management level manager having supervisory authority ...."—and Step 2—on appeal to the Vice President-Labor Relations. [*Id.*/Art. XIX, §§ 1-3/APP 114-115]

[3] In 2025, AT&T and CWA agreed to another CBA. The earlier CBA from 2017 was in force during the events alleged in the FAC. This motion refers to the earlier CBA as the "2017 CBA."

| Step Number | Company Representative Designated to Receive Grievance |
|---|---|
| 1 | General Management level manager having supervisory authority over the conditions or circumstances which gave rise to the grievance. (In the absence of a General Management level, the Company shall inform the Vice President, CWA, District 6, in writing of the appropriate Company representative who is designated to hear grievances.)<br>or<br>Vice President-Labor Relations if the grievance involves employees in more than one General Management level organization. If the grievance is initially filed at this level, there shall be no successive steps. |
| 2 | Vice President-Labor Relations. |

From there, either party may elect arbitration under American Arbitration Association rules but only after the Formal Grievance process is "undertaken and completed." [*Id.*/2017 AGREEMENT OF GENERAL APPLICATION, Art. IV, § 1/APP 222-223]

Local 6201's role in this dispute-resolution framework is limited. CWA's Constitution assigns chartered locals the duty "[t]o process grievances through the step below the top level of the grievance procedure preceding arbitration…." [CWA CONST. art. XIII, § 9(r)/APP 294] The decision to carry a grievance to arbitration belongs instead to the District Vice President.[4] [CWA INTERNAL APPEALS PROCEDURES, § III/APP 325 ("In the event a Vice President determines not to arbitrate a grievance ….")][5] Local 6201's formal role ends at

[4] CWA is organized into various administrative districts below the Executive Board level. CWA CONST. art. IV. Each district is led by a District Vice President. District 6 covers Arkansas, Kansas, Missouri, Oklahoma, and Texas. ABOUT CWA, COMMUNICATION WORKERS OF AMERICA (available at: https://cwa-union.org/about)(last visited: Sep. 2, 2026).

[5] An exception to the District Vice President's authority over arbitration decisions does not apply to Local 6201. Certain locals known as "70/30 split" Locals make arbitration decisions at the local level. [CWA INTERNAL APPEALS PROCEDURES, § III, at 50] Local 6201 is not a "70/30 split" local.

Step 1 in the Formal Grievance process. That is because the appeal to the Vice President-Labor Relations is "the top level of the grievance procedure preceding arbitration…."

CWA affords members and locals certain appeal rights within CWA's grievance-arbitration framework. The CWA Constitution includes "Internal Appeal Procedures" that "provide reasonable regulations for the consideration and review of complaints of members regarding actions of the Union or Local…." [CWA INTERNAL APPEALS PROCEDURES, § III/APP 321; *see also* CWA CONST. art. IX, § 7/APP 285] A member's challenge to an arbitration decision climbs the internal appeals ladder—from the Vice President, to the CWA President, and on to the Executive Board.[6] [CWA INTERNAL APPEALS PROCEDURES, § III/APP 325-326] Each stage affords additional review of the member's complaint with the power to affirm, reverse, or modify the decision below.

### C. Local 6201 Grieves the Suspension on Zavala's Behalf through the First Step Before Passing it on to CWA District 6

Local 6201 filed a grievance (#D-124-23-ATTSW) on Zavala's behalf challenging the DML suspension ("DML Grievance"). [FAC ¶ 195; FAC Ex. 20 (noting "a formal grievance described in the Union's letter dated February 21,

[6] The Internal Appeals Process also provides for a member's complaints against the Local or its officers. [CWA INTERNAL APPEALS PROCEDURES, § I/APP 322] Although Zavala now faults Local 6201's grievance representation, he made no internal complaint against Local 6201 during the appeals process when afforded that opportunity.

2024")] The company denied it at the first level, and Local 6201 passed it up to CWA for appeal to the General Level.[7] A District 6 staffer, Jose Lozano, represented Zavala at the General Level meeting in early 2025.

The company denied the DML grievance on February 25, 2025, in a notice to Lozano (but not to Local 6201). [FAC ¶ 206; Ex. 20 (#124-23)] Lead Labor Relations Manager Guy Stewart heard Zavala's version of events—the same narrative alleged here[8]—but found that Zavala responded to the job-access directive by "contin[uing] to argue" and that he "ultimately left the job without completing his order." [FAC Ex. 20, at 143] Stewart confirmed the denial of the DML Grievance. [*Id.*] The Formal Grievance process was completed.

On April 11, 2025, District 6 Vice President Derrick Osobase notified AT&T of CWA's intent to arbitrate. [FAC Ex. 15, at 128] This form letter asked to "stop the clock" on the grievance timeline. By now, Zavala had given Local 6201 and CWA information gathered through Requests for Information in the underlying grievance, as well as "text messages[…] and other documentary evidence concerning these issues …." [FAC ¶ 204; *see also* FAC ¶¶ 220-221] Lozano, the CWA staff person on the file, made an initial recommendation for arbitration. [FAC ¶ 225; Ex. 16] However, on July 14, 2025, Lozano explained

---

[7] The "General Level" is a reference to the second step of the AT&T-CWA grievance process. [Gipson ¶ 11/APP 3]

[8] Zavala says that "the Company and Union had the opportunity to hear and consider his account during the grievance process," including the account of a witness. [FAC ¶ 189]

to Zavala that the Arbitration Review Panel would "***make the final determination as to whether the case should be arbitrated.***"[9] [FAC ¶ 225; Ex. 16, at 130 (emphasis added)]

The District 6 Arbitration Review Panel ultimately "determined that it would not proceed to arbitration," and Zavala appealed "through each level of the CWA Internal Appeals Procedures." [FAC ¶ 229] On July 21, 2026, CWA's Executive Board denied the appeal, upholding the panel's decision not to carry the DML Grievance to arbitration. [FAC ¶ 234; Ex. 21, at 145]

### D. AT&T Terminates Zavala for Refusing to Follow Company Policy Relating to His Work Schedule

As the DML term ended, Zavala escalated his dispute over scheduling and company policy over "Release Page[s]" to end shifts. On October 16, 2024, he emailed management saying that he would not comply with the "Release Page" policy but would only work his posted hours. [FAC ¶¶ 121, 138-140]

Zavala's supervisor, Byron Majors, held an Expectations Meeting with him two days later. [FAC ¶¶ 121, 138-140; Ex. 8 at 86] The DML period was ending. [FAC ¶¶ 175, 179XX] On October 18, 2024, Majors deactivated the DML and clarified expectations going forward. [FAC ¶¶ 141-158; Ex. 8 at 86] He cautioned that Zavala was expected to "follow all guidelines of the Technician Guidelines ...." [Ex. 8 at 86] Nonetheless, Zavala walked off the job before receiving a release page on his next two shifts. [FAC ¶¶ 141-158]

[9] Lozano also explained that the "stop the clock" phrase refers to preserving Article IV arbitration timelines.

Early the following week, management prepared a Separation Proposal recommending Zavala's termination. [FAC ¶ 161; Ex. 6, at 78]

> 6. Reason(s) for dismissal: Code of Business Conduct – Failure to follow AT&T Field Services Technician Expectations

Human Resources and Labor Relations reviewed the recommendation and accepted it. [Ex. 7 at 81] Labor Relations noted how "progressive discipline did not work for this employee even after numerous discussions." [*Id.*] AT&T terminated Zavala on November 1, 2024, citing Zavala's October 18 email and his refusal to follow company policy. [FAC ¶¶ 2, 159-164] Local 6201 played no part in the decisions leading to termination, and Zavala does not allege otherwise.

### E. Local 6201 Grieves the Termination on Zavala's Behalf through the First Step Before Passing it on to CWA District 6

Zavala challenged his termination in grievance #D-022-24-ATTSW. [FAC ¶ 21] As with earlier grievances, Local 6201 worked with Zavala through the First Level decision and then passed the grievance on to CWA District 6.

For his part, Zavala gathered CBA Appendix J, which he claimed justified his CBA interpretation (and thus his refusals to management), company policies, and other evidence he believed supported his position. [FAC ¶¶ 220-221, 239-40] Lozano, the District 6 staffer, and Local 6201 officers met with the company on July 30, 2025, to present Zavala's case. Management argued that Zavala "failed to follow a directive by leaving before receiving a

release page or approval from management." [Ex. 11, at 94] Despite "every attempt to convince the Company," management refused to reconsider. [*Id.*] AT&T denied the termination grievance at the General Level (Step 2) on August 21, 2025. [FAC ¶ 21]

On September 11, 2025, Lozano notified Zavala of the grievance denial describing his and Local 6201's efforts to reverse the termination. [FAC Ex. 11, at 94] Lozano added that, based on the facts, "it [was] unlikely an arbitrator would rule in favor of the Union" since Zavala had only recently completed the DML for a similar infraction ("not following a manager's directive"), and since Zavala acknowledged that he refused the directive. [*Id.*] Consequently, Lozano recommended against arbitrating the Termination Grievance. [FAC ¶ 22; Ex. 11 at 94]

Zavala again used CWA's Internal Appeals Process to press his case for arbitration. [Ex. 11 at 95] Zavala submitted to District 6 a two-page memo echoing the allegations in the First Amended Complaint (though saying nothing about any Local 6201 failures in the First Step grievance). [*Id.*] On January 2, 2026, District 6 Vice President Derrick Osobase wrote Zavala with the Panel's decision against arbitration. [FAC ¶ 23 (Jan. 2, 2026); Ex. 11, at 97] Osobase explained that, given the information available, CWA was unlikely "to convince an arbitrator that the Company's decision was a violation of the contract." [Ex. 11 at 97] Osobase allowed that Zavala's interpretation of the workday policy regarding field technicians could be arbitrable, but the

Termination Grievance was a disciplinary matter focusing on just cause. Zavala should have grieved the company's contract interpretation rather than refused it—following the adage "obey now, grieve later"). Osobase and District 6 believed that an arbitrator would be unlikely to ignore Zavala's acknowledged refusal to follow management directives—repeatedly. [*Id.*] Consequently, the District 6 Arbitration Review Panel once again chose not to carry a Zavala grievance to arbitration.

Undeterred, Zavala appealed through the remaining steps of CWA's Internal Appeals Process. CWA President Claude Cummings, Jr. affirmed the Panel decision in a four-page letter summarizing Zavala's arguments and explaining District 6's decision. [FAC Ex. 11, at 99] CWA's Executive Board affirmed the decisions below. [FAC ¶ 234] CWA notified Zavala on July 21, 2026, that he had exhausted his internal appeals. [FAC ¶¶ 25, 30; Ex 11, at 119]

### F. Zavala Blames Local 6201 for His Termination Over a Year After the Local 6201's Last Involvement

Although CWA copied the Local 6201 President on letters in the internal appeals process, Zavala does not allege that any Local 6201 officer or representative was involved in this process or any decision reviewed. Indeed, the First Amended Complaint mentions no Local 6201 officer or representative by name. The last involvement of local representatives was in the July 30, 2025 Step 2 meeting over the Termination Grievance. [Ex. 11 at 94] Beyond that, CWA District 6 or higher-level CWA bodies reviewed whether to carry Zavala's

grievances forward.

Almost a year after Local 6201's last involvement, Zavala sought leave to add Local 6201 as a defendant. [ECF 26 (Jul. 20, 2026)] For the first time, Zavala claimed that Local 6201 breached its duty of fair representation. [*Id.*] The First Amended Complaint lists 14 alleged failures by Local 6201 that he says amounts to arbitrary, discriminatory, perfunctory, or bad faith actions. [ECF 30 ¶ 273] He seeks back pay and front pay, other damages, and interest from Local 6201. [ECF 30 ¶¶ 281-288, 294]

## III. STANDARDS GOVERNING THIS RULE 12(b)(6) MOTION

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That requires more than "threadbare recitals of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must take all factual allegations as true—and view them in the plaintiff's favor—but are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.; see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (explaining that courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."). And courts "may infer from the factual allegations … 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

Exhibits to a pleading are "part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also United States ex. Rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (explaining that exhibits attached to pleadings control over contradictory allegations). So, the court's review includes well-pleaded factual allegations, documents attached to the complaint, and documents attached to the motion to dismiss that are central to and referenced in the claim. *See Lone Star Fund V, LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV. ARGUMENTS AND AUTHORITIES

Even accepting Zavala's non-conclusory allegations, the First Amended Complaint fails to allege conduct that is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Zavala therefore fails to plausibly allege a DFR breach by Local 6201. His core allegation—that Local 6201 should have taken his grievance to arbitration—targets a discretionary union judgment about how to marshal limited union resources to enforce contractual protections on behalf of the whole membership. In short, Zavala has no right to insist on arbitration. Even if Local 6201 had power to demand arbitration—which it did not—Local 6201's grievance decisions deserve "wide latitude." *ALPA*, 499 U.S. at 78.

### A. Courts Owe Wide Deference to a Union's Grievance Handling and Arbitration Decisions

The duty of fair representation derives from a union's statutory status as the exclusive collective bargaining representative for its members. *ALPA*,

499 U.S. at 75–76. The duty's scope is coextensive with the union's authority to act as the exclusive agent for the bargaining unit's members over a particular matter. *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989). If a union is not the exclusive agent for that matter, there is no corresponding duty of fair representation. *Id.*

A union breaches that duty when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Conduct is arbitrary only when, "in light of the factual and legal landscape at the time," it falls "so far outside a wide range of reasonableness as to be irrational." *ALPA*, 499 U.S. at 67. Bad faith requires "substantial evidence of fraud, deceitful action, or dishonest conduct." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 300 (1971) (internal quotation omitted); *accord Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 808 (9th Cir. 2017). Neither negligence nor a misjudgment suffices for bad faith or arbitrary conduct. *Landry*, 880 F.2d at 852.

An employee has no absolute right to have a grievance taken to arbitration. *Vaca*, 386 U.S. at 191; *see also Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295, 300 (5th Cir. 1981) (explaining that a union may refuse to prosecute a grievance lacking merit). Nor does he have a right to any other level of the grievance process. *Landry*, 880 F.2d at 852; *see also Turner v. Air Transport Dispatchers' Ass'n*, 468 F.2d 297, 300 (5th Cir. 1972) (noting union's broad discretion to refuse to initiate appeal process). A union has "considerable

discretion" in grievance handling and "may consider the interests of all its members when deciding whether or not to press the claims of an individual employee." *Seymour v. Olin Corp.*, 666 F.2d 202, 208 (5th Cir. Unit B 1982), *disapproved on other grounds by Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 220 (1983); *see also Butschek v. Southwestern Bell Tel. Co.*, 952 F. Supp. 470, 478 (1996) (comparing review of union decisions to judicial review of legislative decisions, citing *ALPA*, 499 U.S. at 78). Indeed, unions at times adopt positions favoring one group of employees over another without breaching the duty of fair representation. *Turner*, 468 F.2d at 300.

To state a plausible claim for DFR breach, Zavala must plead non-conclusory facts showing that Local 6201's conduct was "arbitrary, discriminatory, or in bad faith." *Landry*, 880 F.2d at 852. This duty applies both to grievance investigations and to the grievance itself—where the union must act with "reasonable diligence unless it decide[s] in good faith that the grievance lack[s] merit or for some other reason should not be pursued." *Id.* (cleaned up).

Zavala must allege more than merely that Local 6201's representation was "less than enthusiastic" or imperfect. *Landry*, 880 F.2d at 852. Rather, he must allege arbitrary, bad faith, or discriminatory conduct by Local 6201 that "undermined the fairness or integrity of the grievance process." *Id.* (cleaned up). The bar is set high—and these allegations do not come close to clearing it.

### B. Zavala Does Not Allege Discrimination or Bad Faith by Local 6201 (or CWA)

The 52-page amended complaint is as notable for what is missing as what its 296 paragraphs allege. Zavala never claims that Local 6201 (or CWA) discriminated or retaliated against him. He points to no similarly situated employee treated more favorably by either union. *See Turner*, 468 F.2d at 301 (affirming summary judgment for union). Although he plainly disagrees with Local 6201's (and CWA's) decisions and CBA interpretations, there is no suggestion that either union deprived him of procedural rights or otherwise misapplied the process.

Moreover, the First Amended Complaint's only mention of bad faith is conclusory. [FAC ¶ 247] Bad faith turns on union officials' subjective motives. *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017). To meet this "demanding standard," he must allege that they intended harm and thereby undermined the process. *Id.* (*quoting ALPA*, 499 U.S. at 78). Yet he alleges nothing close to "substantial evidence of fraud, deceitful action, or dishonest conduct." *Lockridge*, 403 U.S. at 300. He does not sufficiently plead bad faith.

Because allegations of disparate treatment and bad faith are absent, the DFR claim hinges on whether Local 6201 was arbitrary toward Zavala in the DML and Termination Grievances.

### C. Zavala's Allegations and Exhibits Show that Local 6201's Representation was Neither Arbitrary nor Perfunctory

Unions retain "considerable discretion in processing grievances …." *Landry*, 880 F.2d at 852. A member has no right to insist on arbitration or any other step in the process. *Id.* The union always retains the ability to decide "in good faith that the grievance lacked merit or for some other reason should not be pursued." *Id.* (cleaned up).

Thus, a union satisfies its duty when it does not "arbitrarily ignore" a valid grievance, "process it in a perfunctory fashion," or fail to use reasonable diligence. *Id.* This conduct must be judged "in light of the factual and legal landscape at the time," and breaches the duty only if it falls "so far outside a wide range of reasonableness as to be irrational." *ALPA*, 499 U.S. at 67.

Local 6201's (and later CWA's) representation—even if imperfect—was neither arbitrary nor perfunctory. Zavala's burden is to allege more than mere mistake or error. Even if he now second-guesses Local 6201's (and CWA's) representational decisions or strategy, those were union judgment calls. *Landry*, 880 F.2d at 852 (explaining that unions may "decide in good faith that the grievance lack[s] merit or for some other reason should not be pursued." (cleaned up)).

The duty of fair representation guarantees fair treatment, not specific outcomes. Zavala offers only conclusory allegations in place of plausible factual allegations and inferences of Local 6201's failures, and his DFR claim should be dismissed.

### 1. *CWA's Decision Not to Arbitrate Is a Core Union Judgment and Not a DFR Breach Absent Bad Faith or Discrimination*

Underlying Zavala's litany of union wrongdoing is the core claim that Local 6201 (and CWA) "refus[ed] to advance his termination grievance to arbitration…." [FAC ¶ 273(c)] But this does not—without more—amount to bad faith, arbitrary, or perfunctory treatment. *Turner*, 468 F.2d at 300. The discretion to prosecute grievances includes the right to decide that the grievance lacks merit. In *Turner*, the union refused to file the worker's grievance without violating any duty. *Id.* Union officials heard Turner's arguments, discussed them, and then decided not to grieve. *Id.* Further investigation was unnecessary since facts were not disputed and the only differences were over contract interpretation. *Id.*

Local 6201 had no role in the decisions over Zavala's Termination Grievance, as explained below. *Turner*, however, applies with equal force to CWA's decision not to carry the grievance to arbitration (which Zavala attributes to Local 6201). CWA was free to disagree with Zavala's contractual arguments, and it was free to decide that the "grievance lacked merit or for some other reason should not be pursued." *Landry*, 880 F.2d at 852. Indeed, CWA had a duty to "consider the interests of all its members when deciding whether or not to press the claims of an individual employee." *Seymour*, 666 F.2d at 208. Zavala's allegations and exhibits do not show any motive other than a local and international union "m[aking] every attempt" to save a member's job while disagreeing with that member's idiosyncratic CBA

interpretation.

### 2. *CWA's Multi-Layered Grievance Handling and Internal Appeals Procedures Were Thorough and Fair*

Two unions represented Zavala through numerous meetings in the CBA's multi-step grievance process over 13 months, making "every attempt to convince the Company" to reverse the termination. [FAC Ex. 11 at 94] Nonetheless, Zavala now cites a laundry list of supposed process failures, inadequate investigation, misinterpretations, and stonewalling. [FAC ¶ 273] Conclusory labels such as these are not enough. Zavala must plead non-conclusory allegations that Local 6201 gave his grievances short shrift or decided them without reasonable diligence.

*Vaca* itself suggests why the union's efforts here were more than enough. *Vaca*, 386 U.S. at 191. The Supreme Court characterized the union's efforts as "diligently supervising" the process when it carried the grievance to the last step, tried to secure other work, and only abandoned arbitration after concluding that it could not show wrongful discharge. *Id.* at 193-194.

Zavala's complaint and exhibits show even greater efforts by Local 6201 (and CWA). Local 6201 officers represented Zavala at Step 1 and remained involved through the Step 2 meeting in July 2025. [FAC Ex. 11, at 94] District 6 staff then advocated for Zavala at the General Level for both grievances, arguing his case and exploring resolution short of termination. [*Id.*] Zavala then had three chances to make—and restate—his case for arbitration in the Internal Appeals Process. [*Id.*] These efforts are not arbitrary or perfunctory.

Local 6201's (and CWA's) "repeated efforts on plaintiff's behalf constitute compelling evidence of good faith and lack of perfunctory treatment." *See Connally v. Transcon Lines*, 583 F.2d 199, 202-03 (5th Cir. 1978).

### 3. *CWA's Grievance and Arbitration Decisions Were Judgment Calls to Which Courts Should Defer*

A union does not breach its duty "through simple negligence or a mistake in judgment." *Landry*, 880 F.2d at 852-54 (citing *Vaca*, 386 U.S. at 192-93). Even if a union "fall[s] short of the best in contract administration," the duty of fair representation "does not reach all less than perfect behavior." *Id.* (cleaned up). This is true even where the grievance is later proved meritorious. *Bache v. AT&T Co.*, 840 F.2d 283, 290 (5th Cir. 1988). The standard for bad faith is "demanding," and arbitrary behavior must be so far outside a "wide range of reasonableness" as to be irrational. *See ALPA*, 499 U.S. at 67; *Carr*, 866 F.3d at 602.

None of Zavala's catalogue of complaints clears these standards. Most are conclusory and lacking in context or detail. For instance, he says Local 6201 "stonewall[ed]" his requests for grievance records without identifying any record withheld. [FAC ¶ 273(f)] If that is a reference to the union's motion to quash his subpoena—which the Court partly sustained—it postdates the events in his complaints by months. [ECF 22-23] Otherwise, the allegation is without context or explanation.

Likewise, he alleges that Local 6201 "misrepresent[ed] the facts and the Company's stated reasons for termination…[.]" [FAC ¶ 273(d)] But he does not

say what Local 6201 said that was untrue, nor explain how it misrepresented AT&T's reasons. Yet Exhibit 11 shows the union giving the company's reasons consistent with the company's stated rationale. [*Compare* FAC Ex. 11 at 94 ("you failed to follow a directive …") *with* Ex. 8 ("you failed to follow a manager directive") *and with* Ex. 6 ("Code of Business Conduct – Failure to follow AT&T Field Services Technician Expectations")]

Moreover, allegations that Local 6201 "fail[ed] to adequately investigate" and "failed to engage with the substance" of Zavala's CBA and policy interpretations are mere disagreements over tactics and strategy. *See Bache,* 840 F.2d at 290 (federal law empowers union to "act according to its own reasonable interpretation of [a] labor contract."). In the Termination Grievance, for instance, Zavala alleges that Local 6201 "did not meaningfully investigate whether the Release Page practice was consistent with [the CBA's] scheduling provisions" and "did not interview relevant witnesses, request additional documentary evidence…, or meaningfully address the contractual provisions" he believed were in his favor. [FAC ¶¶ 241-42; *see also id.* ¶ 273(a), (e)] But these are claims about the extent or depth of investigation, not that Local 6201 ignored the grievance or contrived bad-faith reasons to end it. Equally plausible from the allegations and exhibits is the inference that CWA knew the CBA bargaining history and past practices—and concluded that Zavala's interpretation was unsupported.

Meanwhile, Zavala's exhibits show that Local 6201 (and later CWA)

considered his arguments and then provided rationales for disagreeing with them. [FAC Ex. 11, at 94, 97, 99] District 6 staff recommended against arbitrating the Termination Grievance because it was "unlikely" an arbitrator would rule for Zavala "since [he] had recently completed a DML step of discipline … for not following a manager's directive" and because he "acknowledged not following" the directive not to leave before receiving a "release page." [FAC Ex. 11 at 94][10] The Arbitration Review Panel's explanation was more detailed, and CWA President Cummings's response more detailed still. [*Id.* at 97, 99] A theme in these responses was the fundamental labor-law adage "obey now, grieve later." [Ex. 11, at 97] Whatever his contractual disagreements, the "correct process to resolve a dispute over contract language" was through a grievance, not by refusing to work or walking off the job. [*Id.*] Zavala did the opposite: he refused before grieving.

If Local 6201's efforts on Zavala's behalf are shown to be "less than enthusiastic" or even "imperfect," these allegations still do not show a fundamentally flawed or unfair process. *See Landry*, 880 F.2d at 852 (requiring union conduct that "undermined the fairness or integrity of the grievance process.")(cleaned up).

---

[10] Again, exhibits attached to Zavala's complaints are part of his complaint "for all purposes." *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004); *see also Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("The litigant may be defeated by his own evidence, the pleader by his own exhibits[.]").

### 4. *Zavala's Allegations Target Conduct by AT&T and CWA District 6, Not Local 6201*

Zavala's DFR claim not only fails in substance but is misdirected at Local 6201. He defines "Communications Workers of America, Local 6201" as a labor organization representing AT&T employees and alleges that Local 6201 "served as [his] exclusive bargaining representative …." [FAC ¶¶ 5-6] From there, he conflates the local union with CWA, naming only CWA officers and representatives. Further, Zavala's exhibits are all to or from *CWA* representatives. [FAC Ex. 15 (District 6 Vice President); Ex. 16 (from "CWA Staff Representative"); Ex. 11 and 21 (CWA letterhead and address)(from CWA Secretary-Treasurer)] Local 6201's only contact with those communications is as a recipient (by carbon copy).

To the extent it names anyone, the First Amended Complaint names CWA officials and CWA organs (e.g., Arbitration Review Panel, Executive Board). Local 6201 is affiliated with CWA, but the two are distinct entities. Each has its own governing structure under the CWA Constitution, separate officers and committees, and—most importantly—defined roles in the CBA grievance framework and the Internal Appeals Process. CWA is an international union representing hundreds of thousands of employees in over 2,000 bargaining units across the country and in Canada. *See Finerty v. NLRB*, 113 F.3d 1288, 1290 (D.C. Cir. 1997). Local 6201 represents fewer than 1,000 AT&T employees in two Texas counties.

The common law of agency applies to Local 6201's potential liability

under § 301. *See Bache*, 840 F.2d at 291 (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216-218 (1979)). The local's liability under the duty of fair representation for the international union's conduct and decisions requires plausible allegations that CWA was acting as the local's agent, or vice versa. But CWA has its own—exclusive—role in the CBA's grievance process at the General Level and beyond. [APP 114-117, 222-223] Local 6201's role is limited to "process[ing] grievances through the step below the top level of the grievance procedure preceding arbitration…."—that is, through Step 1. [CWA Const. Art. XIII, § 9(r)/APP 295; 2017 CBA Art. XIX/APP 114-115] The Southern District of Texas described this two-tier system as the national union "assuming direct responsibility at the top levels" of the process. *See Butschek*, 952 F. Supp. at 477.

Zavala does not allege the necessary agency relationship. Instead, he conflates CWA international with one of its local unions. The First Amended Complaint, however, is against Local 6201. Zavala fails to allege that Local 6201 was involved in the key meetings or discussions surrounding the DML and Termination Grievances. In short, he has not alleged a DFR breach by *this* defendant. The Court should dismiss the Section 301 claim against Local 6201.

## V. <u>CONCLUSION</u>

Zavala's First Amended Complaint fails to state a viable claim for relief. He alleges no discrimination, no bad faith, and no conduct by Local 6201 that is so far outside the range of reasonableness as to be irrational. Zavala has not

stated a claim for DFR breach. *See* Vaca, 386 U.S. at 190. The Court should dismiss Zavala's Section 301 claim against Local 6201. *See* FED. R. CIV. P. 12(b)(6).

Dated: September 9, 2026

Respectfully submitted,

GILLESPIE SANFORD LLP

4803 Gaston Ave.
Dallas, Texas 75246
Tel: 214.800.5111
Fax: 214.838.0001

By: ______________________
James D. Sanford
Texas Bar No. 24051289
Email: jim@gillespiesanford.com

ATTORNEY FOR DEFENDANT
CWA LOCAL 620

## CERTIFICATE OF SERVICE

I certify that on September 9, 2026, I electronically submitted this document to the clerk of court for the U.S. District Court for the Northern District of Texas, using the court's electronic case files system. The electronic case files system sent a "Notice of Electronic Filing" to Plaintiff and Defendant AT&T's counsel of record, who have consented to accepting the notice as service by electronic means.

______________________